2001 UT App 37

**STATE of Utah, Appellee,**

v.

**Narcisco Castillo TOLANO, Jr., Appellant.**

No. 20000125–CA.

Court of Appeals of Utah.

Feb. 8, 2001.

Catherine E. Lilly and Otis Sterling III, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Mark Shurtleff and Karen Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Narcisco Castillo Tolano, Jr. (Tolano) appeals from his judgment of conviction for illegal distribution of a controlled substance in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). Tolano argues that the trial court abused its discretion when it denied his motion for a continuance because the State failed to fulfill the mandatory notice requirements regarding expert witnesses set out in Utah Code Ann. § 77–17–13 (1999).[1] We reverse and remand.

## BACKGROUND

¶ 2 On April 27, 1999, Officers Matt Larson and James Washington were on patrol in an unmarked police car when they observed Tolano and another person exit a bar together. The officers, suspicious of drug activity, circled the block and saw Tolano kneeling in front of the open door of a car. The officers stopped their car, Officer Larson exited his vehicle, and approached Tolano. As he approached, Officer Larson observed Tolano give the person in the car two packages of white powder. Officer Larson then saw the person in the car give Tolano money. Based on these observations, the officers arrested Tolano and the other person. After Tolano and the other suspect were taken into custo-

---

1. Tolano also argues that he is entitled to a new trial because the trial court misplaced a note written to the jury during deliberations. In light of our ruling, we do not address this argument in detail. However, we note that "[d]ue process 'requires that there be a record adequate to review specific claims of error already raised.' "

*West Valley City v. Roberts,* 1999 UT App 358,- ¶ 11, 993 P.2d 252 (citation omitted). Here the trial court misplaced the note to the jury; therefore, the record would be inadequate to review Tolano's claim of error respecting the contents of the note.

dy, the State crime lab identified the contents of the packages as cocaine. The State charged Tolano with distribution of a controlled substance in violation of section 58–37–8(1)(a)(ii).

¶3 At Tolano's preliminary hearing, the State presented a toxicology report prepared by two criminologists from the Utah State Crime Laboratory. The report was signed by both criminologists, and it established that the white powder in the two packages was cocaine. Tolano was allowed to look at the report but the State did not provide him with a copy of the report or any other information regarding the criminologists. During Tolano's trial, the State called the two criminologists as expert witnesses to identify the white powder found in the two packages. After the testimony of these two experts, Tolano moved to strike their testimony. In the alternative, Tolano moved for a continuance pursuant to Utah Code Ann. § 77–17–13(4)(a) (1999). Tolano noted that section 77–17–13 requires the State to provide him with the names, addresses, resumes, and reports of any proposed expert witnesses. Tolano argued that the State did not fulfill these notice requirements for expert witnesses because the State merely showed him a report containing the names of the two criminologists. Tolano reasoned that because the State failed to meet the notice requirements of section 77–17–13, the trial court should strike their testimony or, in the alternative, grant him a continuance.

¶4 The trial court denied Tolano's motions. The court reasoned that the primary purpose of section 77–17–13 is to prevent surprise, and that purpose was served when the State showed Tolano the toxicology report. The court also noted that Tolano should have anticipated an expert witness from the crime laboratory, and any continuance would inconvenience the court and the empaneled jury. Subsequently, Tolano was convicted of illegal distribution of a controlled substance. Tolano timely appealed this judgment of conviction.

## ISSUE AND STANDARD OF REVIEW

¶5 Tolano argues that the trial court abused its discretion when it denied him a continuance based on the State's failure to comply with the notice requirements of section 77–17–13. A trial court's decision to either grant or deny a continuance is clearly within its discretion. *See State v. Arellano*, 964 P.2d 1167, 1169 (Utah Ct.App.1998). "Therefore, we will not disturb such decisions absent a clear abuse of discretion." *Id.*

## ANALYSIS

¶6 Tolano argues that the trial court erred when it denied him a continuance because the State failed to provide adequate notice regarding two of its expert witnesses. *See* Utah Code Ann. § 77–17–13 (1999).

¶7 Section 77–17–13 states:

(1)(a) If the prosecution or the defense intends to call any expert to testify in a felony case at trial or any hearing, excluding a preliminary hearing held pursuant to Rule 7 of the Utah Rules of Criminal Procedure, the party intending to call the expert shall give notice to the opposing party as soon as practicable but not less than 30 days before trial or ten days before the hearing.

(b) Notice shall include the name and address of the expert, the expert's curriculum vitae, and a copy of the expert's report.

. . . .

(4)(a) If the defendant or the prosecution fails to meet the requirements of this section, *the opposing party shall be entitled to a continuance of the trial or hearing sufficient to allow preparation to meet the testimony.*

*Id.* (emphasis added).

¶8 In *State v. Arellano*, 964 P.2d 1167 (Utah Ct.App.1998), a case similar to the present case, this court addressed the notice requirements of section 77–17–13. In *Arellano*, we stated:

Clearly the statute's notice requirement contemplates that a party be able to adequately prepare to meet adverse expert testimony. The statutory language clearly and unambiguously states that, upon the trial court's finding that a party failed to comply with the thirty day notice require-

ment, the opposing party "shall be" entitled to a continuance of the trial or hearing "sufficient to allow preparation to meet the testimony." The statutory language "shall" is not advisory; it is mandatory. *See Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1035 (Utah 1983) (strictly interpreting "shall" as mandatory). Therefore, the statute clearly requires the trial court to grant the statutory relief to allow a party to adequately prepare. However, we note that the statutory language, "sufficient to allow preparation to meet the testimony," leaves some discretion with the trial court to consider the circumstances....

*Id.* at 1170 (quoting Utah Code Ann. § 77-17-13(1)(b) (1995)).

■ ¶ 9 When reviewing a trial court's denial of a requested continuance for a section 77-17-13 notice violation, we consider four factors. *See Arellano,* 964 P.2d at 1170; *State v. Begishe,* 937 P.2d 527, 530 (Utah Ct.App.1997). Specifically, this court looks at:

"(1) the extent of appellant's diligence in his [or her] efforts to ready his [or her] defense prior to the date set for trial; (2) the likelihood that the *need* for a continuance could have been met if the continuance had been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the appellant might have suffered harm as a result of the court's denial."

*Arellano,* 964 P.2d at 1170 (quoting *Begishe,* 937 P.2d at 530) (alterations in original).

■ ¶ 10 Here, the trial court acknowledged that the state failed to meet the notice requirements of section 77-17-13, and the court recognized that the language of the statute was mandatory. However, the court stated that the purpose of section 77-17-13 was to prevent surprise, and the court thought that "there [was] a complete absence of surprise in this case...." In addition, the

court stated that "it would be inconvenient for everybody to continue the case at this point." Consequently, the trial court refused to grant Tolano a continuance.

¶ 11 We conclude the trial court abused its discretion when it denied Tolano's motion for a continuance. First, Tolano exercised appropriate diligence in his efforts to ready his defense prior to the date set for trial. *See Arellano,* 964 P.2d at 1170. For example, Tolano interviewed witnesses and made arrangements to have witnesses, including his stepson from Mexico, testify on his behalf. In addition, Tolano extensively cross-examined most of the State's witnesses,[2] Tolano made a chart outlining the area where the alleged offense occurred, and Tolano arranged for an interpreter when necessary. Finally, although Tolano was aware that the criminologists prepared the toxicology report, "it is not defendant's duty to anticipate and prepare for all potential, yet undisclosed expert witnesses...."[3] *Id.* at 1171. Consequently, "defense counsel appears to have been fully prepared to present defendant's case." *Id.* at 1170.

¶ 12 Second, it is likely that Tolano could have been more adequately prepared to meet the expert testimony if the trial court had granted the continuance. Specifically, a continuance would have provided Tolano with an opportunity to examine the testing procedures used by the experts and compare them with other testing methods, hire his own expert to challenge the testing procedures, and examine the resumes of the experts and possibly impugn their qualifications. Therefore, "[a] continuance would have both provided defendant more time to prepare to challenge [the experts'] testimony ... and then incorporate any new information into the defense strategy." *Id.* at 1171.

¶ 13 Third, Tolano's right to a fair trial outweighed any inconvenience to the court, the opposing party, and the jury that may have been caused by a continuance. "Al-

---

**2.** Tolano notes that he was unable to cross-examine the State's experts because the State did not fulfill the notice requirements of section 77-17-13.

**3.** Although the toxicology report contained the names of the criminologists who prepared the report, it does not necessarily follow that the State will call one or both of these experts at trial.

though inconvenience to the court and jury is one of the four factors considered, this court has specifically held that such an administrative concern is outweighed by the appellant's right to a fair trial." *Id.* at 1170. Therefore, the administrative concern noted by the trial court regarding the inconvenience of a continuance was outweighed by Tolano's right to a fair trial.

¶ 14 The final factor—the extent to which Tolano might have suffered harm as a result of the court's denial—is the "'most important among the factors.'" *Id.* at 1171 (citation omitted). In *Arellano*, we recognized the difficult burden placed on defendants to establish prejudice in cases such as these, and we shifted the burden of proving prejudice from the defendant to the State. *See id.* "Therefore, to establish that the prosecution's error was not prejudicial, the State must persuade the court that there is no reasonable likelihood that, absent the prosecution's error, the outcome would have been more favorable for defendant." *Id.*

¶ 15 In the present case, the State has not met its burden, and "we are left to speculate as to what defendant could and would have done. Therefore, if any party should suffer from the uncertainty, it should be the party at fault. As such, we give defendant's explanation of prejudice ... the benefit of the doubt." *Id.* With this in mind, we conclude that the State inappropriately hindered Tolano's ability to refute the testimony of the two experts when it failed to fulfill the requirements of section 77–17–13. The testimony and report of the experts was the only evidence establishing that the powder in the packages was a controlled substance. Therefore, it is likely that Tolano was harmed by the trial court's failure to grant a continuance because the denial prevented Tolano from developing an effective challenge to an element of the crime.

¶ 16 The State urges us to affirm Tolano's conviction because section 77–17–13 was amended after this court's decision in *Arellano*. The State notes that the Legislature added the following provision to section 77–17–13:

For purposes of this section, *testimony* of an expert at a preliminary hearing held pursuant to Rule 7 of the Utah Rules of Criminal Procedure constitutes notice of the expert, the expert's qualifications, and a report of the expert's proposed trial testimony as to the subject matter testified to by the expert at the preliminary hearing.

Utah Code Ann. § 77–17–13(5)(a) (1999) (emphasis added). The State argues that this 1999 amendment overruled *Arellano* because the meaning of "testimony" is broad enough to include toxicology reports. We disagree.

¶ 17 "'"When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute."' Therefore, 'where the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent.'" *State v. Tryba*, 2000 UT App 230,-¶ 13, 8 P.3d 274 (citations omitted). Here, the Legislature used the term "testimony" when it provided an alternate method of fulfilling the notice requirements of section 77–17–13. *See* Utah Code Ann. § 77–17–13(5)(a) (1999). *Blacks Law Dictionary* defines testimony as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." Blacks Law Dictionary 1485 (7th ed.1999). In the present case, neither criminologist presented evidence under oath at the preliminary hearing. Therefore, the criminologists did not testify at Tolano's preliminary hearing, and the State was not excused from the notice requirements of section 77–17–13.

¶ 18 Moreover, section 77–17–13 clearly contemplates that the expert take the stand and provide live testimony because such a provision would enable a party "to adequately prepare to meet adverse expert testimony." *Arellano*, 964 P.2d at 1170. Specifically, when an expert testifies at a preliminary hearing, the adverse party is able to obtain "the name and address of the expert, the expert's curriculum vitae, and a copy of the expert's report." Utah Code Ann. § 77–17–13(1)(b) (1999). In addition, the opportunity to cross examine the expert witness enables a party to elicit much more information than the mere notice require-

ments of section 77–17–13. Therefore, we conclude that the 1999 amendment to section 77–17–13 did not overrule *Arellano,* and an expert must provide live testimony at the preliminary hearing to satisfy the alternate notice provision of Utah Code Ann. § 77–17–13(5)(a) (1999).[4]

## CONCLUSION

¶ 19 We conclude that the State failed to fulfill the notice requirements of section 77–17–13 when it merely showed Tolano a copy of the toxicology report at Tolano's preliminary hearing. Therefore, Tolano was entitled to a continuance pursuant to section 77–

17–13, and the trial court abused its discretion when it denied Tolano's motion for a continuance. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[5]

¶ 20 We concur: JUDITH M. BILLINGS, Judge, and GREGORY K. ORME, Judge.

---

**4.** Our conclusion is also supported by the plain language of subsection (5)(b), which states: "Upon request, *the party who called the expert* at the preliminary hearing shall provide the opposing party with a copy of the expert's curriculum vitae as soon as practicable prior to trial or any hearing at which the expert may be called as an expert witness." Utah Code Ann. § 77–17–13(5)(b) (1999) (emphasis added). As only a witness, and not a document, may be called, it is

clear that the expert(s) must take the stand at the preliminary hearing in order to satisfy the notice requirements of section 77–17–13.

**5.** Tolano also argued that the judgment should be reversed because there was insufficient evidence to support his conviction. In light of our ruling, we do not address this issue.